IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CARL HOOTEN,

    Plaintiff,

v.                                     Civ. No. 10-776-RGA

GREGGO AND FERRARA COMPANY,

    Defendant.

---

Carl Hooten, New Castle, Delaware. Pro se Plaintiff.

Adria Benner Martinelli, Esquire; Barry M. Willoughby, Esquire; Young, Conaway, Stargatt & Taylor LLP, Wilmington, Delaware. Counsel for Defendant.

---

**MEMORANDUM OPINION**

Dated: October 3, 2012
Wilmington, Delaware

*/s/ Richard G. Andrews*
**ANDREWS, United States District Judge:**

Plaintiff Carl Hooten, proceeding pro se, filed this action (D.I. 16) alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. The Amended Complaint mentions 18 U.S.C. §§ 1341 and 1346, 42 U.S.C. §§ 1964,[1] 1983, and 1985, the Fifth and Fourteenth Amendments to the Constitution, and 19 Del. C. §§ 801 and 802. Before the Court is Defendant Greggo and Ferrara Company's Motion for Summary Judgment (D.I. 49) and Plaintiff's "Motion for Joinder Under FRCP Rule 19, FRCP Rule 60 (Relief from Judgments and Orders) and Summary Judgment." (D.I. 56). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons set forth below, the Court will grant Defendant's Motion (D.I. 49) and will deny Plaintiff's Motion (D.I. 56).

I. **Factual Background**

Plaintiff, an African American, was employed as a laborer for fourteen years by Defendant, a road construction company. Plaintiff is a member of United Steelworkers Local 15024 (the "Union"). (D.I. 16.) Defendant terminated Plaintiff's employment on March 18, 2009. (D.I. 16 ex. B.) Plaintiff alleges employment discrimination by reason of race. He filed a charge of discrimination and the Equal Employment Opportunity Commission issued a right-to-sue notice on June 17, 2010. (D.I. 10, p.15). This lawsuit followed.

On March 18, 2009, Plaintiff was working the 7:00 a.m. to 5:00 p.m. shift at Defendant's Choptank Road location. (D.I. 16.) Plaintiff and a coworker, Ronald Krouse, who is Caucasian, were required to report to site supervisor Dana Flemings at

---

[1] 42 U.S.C. § 1964 is a nonexistent statute.

a second job site by 3:00 p.m. (*Id.*) As Plaintiff and Krouse were walking to the second site, Flemings and safety director Karen Reynolds witnessed them carrying shovels and bundles of company scrap wire towards Krouse's truck. (D.I. 16 ex. B.) Flemings saw Hooten place a shovel in the back of the truck, and saw Krouse place a shovel and scrap wire in it. (*Id.*) Flemings contacted Defendant's vice-president, Nick Ferrara III ("Ferrara") and told him what he saw. (*Id.*) Ferrara instructed Flemings to immediately terminate Plaintiff and Krouse. (*Id.*) Flemings issued the two employees identical notices of termination for theft. (D.I. 51, A17, A18.)

Plaintiff and Krouse filed grievances. (*Id.* at A19, A20, A36.) They were both represented by Union president, Adam Britt. (*Id.* at A36-37.) According to Defendant, it offered both employees reinstatement to their prior positions to avoid the cost of litigating the grievances to arbitration. (*Id.* at A33-34, A37.) Krouse was offered reinstatement without back pay or compensation of any kind, and placed on a probationary period during which he would not accrue seniority or collective bargaining rights. (*Id.* at A33-34, A37-39.) Krouse agreed to the terms of the offer and executed a settlement agreement. (*Id.* at A21, A38.)

According to Defendant and Britt, Plaintiff was offered the opportunity to return to work immediately with no probationary period, two-thirds back pay, and his record wiped clean, but Plaintiff rejected the offer. (D.I. 51, A33-34, A39.) According to Plaintiff, Britt did not communicate any offer that would allow him to return to work, while Britt testified that he had communicated Defendant's offer. (*Id.* at A38-39, A44; D.I. 55 Hooten aff.) Plaintiff did not participate in any settlement discussions. (D.I. 55 Hooten aff.)

2

Plaintiff proceeded to arbitration under the collective bargaining agreement. (D.I. 51, A1-16.) Plaintiff was represented by Britt at a July 31, 2009 arbitration hearing. The arbitrator issued a decision on August 31, 2009, and found that Defendant had just cause to terminate Plaintiff's employment for theft. (*Id.* at A22-32.) The arbitrator stated, "It is clear beyond peradventure that Mr. Hooten is guilty as charged. There is no sufficient or compelling reason in the record for me to set aside the Employer's determination to fire Mr. Hooten for theft of scrap material."[2] (*Id.* at A30-31.) Defendant did not reinstate Plaintiff. Britt, who represented Plaintiff during arbitration, testified that he had no reason to believe that Plaintiff was terminated because of his race. (*Id.* at A41.)

Defendant moves for summary judgment (D.I. 49) on the grounds that: (1) there is no evidence of any racial bias in the termination, reinstatement, or arbitration proceedings; and (2) the remaining claims are not cognizable. Plaintiff filed a motion (D.I. 56) titled Motion for Joinder under FRCP Rule 19, FRCP Rule 60 (Relief from Judgments and Orders) and Summary Judgment, and it appears that he, too, seeks summary judgment.

Plaintiff's Motion is supported by the affidavit (D.I. 56) of Sarah Williams, his expert witness. Defendant moves to strike (D.I. 58) the affidavit as it does not comply with Fed. R. Civ. P. 26(a)(2)(B) in that it does not include Williams' qualifications, a list

---

[2]The arbitrator's decision make no reference to any type of discrimination.

of other cases wherein she has testified, or a statement of the compensation to be paid.[3]

Federal Rule Civil Procedure 37 provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ .P. 37(c)(1); *see also Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) ("Rule 37 is written in mandatory terms, and is designed to provide a strong inducement for disclosure of Rule 26(a) material") (quotations and citation omitted). The affidavit at issue fails to comply with Rule 26. On the other hand, since the Plaintiff is pro se, there might be reason to give him more latitude than if the affidavit had been filed by a lawyer. It does not appear to be necessary to resolve this issue. The affidavit consists of legal conclusions without proper support. The affidavit speaks to the arbitration hearing, but, as will be discussed, Plaintiff's claims under the collective bargaining agreement ("CBA") are time-barred. Therefore, since the affidavit is irrelevant to the non-time-barred issues, its format is of no moment. Hence, at this juncture, there is no need to consider the issue further.

## II. Discussion

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving

---

[3]Williams testified at her deposition that she would receive a contingency fee. (D.I. 38 ex. A at 15.)

4

that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

**Title VII.** Defendants argue that plaintiff cannot make a prima facie case of race discrimination. A plaintiff may prove race discrimination by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989), or indirectly through the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because there is no direct evidence of discrimination, the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, plaintiff must first establish a prima facie case of race discrimination by proving that:
(1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered some form of adverse employment action; and (4) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999).

If plaintiff succeeds in establishing his prima facie case, the burden shifts to defendant employer to proffer "legitimate non-discriminatory" reason for its actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If defendant meets this burden, the burden again shifts to plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *Id.* at 142-43. To do this, plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). "'[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).'" *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. 2006) (quoting *Fuentes*, 32 F.3d at 764).

Defendant argues that Plaintiff failed to establish the third prong of the prima facie case, that is, that the discipline and termination occurred under circumstances giving rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. "To make a comparison of [Plaintiff's] treatment to that of an employee outside [Plaintiff's] protected class for purposes of a Title VII claim, [he] must show that he and the employee are similarly situated in all *relevant* respects. *Houston v. Easton Area Sch. Dist.*, 355 F.

App'x 651, 654 (3d Cir. 2009) (emphasis in original). Whether a factor is relevant for purposes of a similarly situated analysis must be determined by the context of each case. *See id.*

The relevant factors may include the positions held, the decisionmakers, the conduct that led to the action, the timing of the separation, and the terms of the separation. *See generally id.* at 654-55. Plaintiff is not required to show that he is identical to the similarly-situated comparator, but he must show "substantial similarity." *Id.* at 655. Accordingly, in order to establish an appropriate class of similarly situated comparators, Plaintiff must identify employees who share characteristics that are relevant to the facts of this case.

In the instant case, the individual to whom Plaintiff compares himself as having been treated more favorably (*i.e.*, Krouse) is not similarly situated in relevant respects.[4] Krouse did not proceed to arbitration; nor was he the subject of an adverse finding. In light of the foregoing, the Court finds that Plaintiff has failed to meet his burden to establish a prima facie case of race discrimination. Looked at in another way, Krouse and the Plaintiff were similarly situated until Krouse accepted the Defendant's reinstatement offer and Plaintiff did not (whether it was because he was not told about it by the union representative or turned it down). Up to that point, there is no evidence

---

[4]It is undisputed that Defendant made the offer of reinstatement to Plaintiff's Union representative, Britt. What is in dispute is whether whether Britt communicated the offer to Plaintiff. (*See* D.I. 51, A39 (Britt describes his discussions with Plaintiff about the offer) & *id.* A44 (Plaintiff denying the discussions)). Regardless, the offer of reinstatement (even if never communicated to Plaintiff) belies Plaintiff's position that Krouse was treated by the employer more favorably than he was. Indeed, the terms that the employer offered Britt, the union representative for both Plaintiff and Krouse, were appreciably more generous for Plaintiff than for Krouse.

7

that Plaintiff was treated worse than Krouse was. Once their paths diverged, they and their situations were not comparable. Thus, Plaintiff has not shown a prima facie case of discrimination, and his Title VII claim fails.

Assuming arguendo that Plaintiff had established a prima facie case of discrimination, Defendant has provided legitimate, nondiscriminatory reasons for its decision to terminate him. The evidence and documentation indicate that Plaintiff was terminated for theft. Plaintiff disputed the charge, filed a grievance, and went to arbitration, where the arbitrator found in favor of Defendant, finding that it had just cause to discharge Plaintiff for theft. The arbitration decision finding just cause for Defendant's termination of Plaintiff is evidence that Defendant satisfied its burden at stage two of the *McDonnell Douglas* burden-shifting framework. *See Jasany v. United Postal Serv.*, 755 F.2d 1244, 1252 (6th Cir. 1985) ("While the outcome of an arbitration decision in favor of the employer is not dispositive of a Title VII suit of whether there was discrimination, 'an arbitration decision in favor of the employer is sufficient to carry the employer's burden of *articulating* "some legitimate, nondiscriminatory reason for the employee's rejection."'") (citations omitted; emphasis in original).

There is nothing before the Court that contradicts the proffered reason for Plaintiff's termination. Nor are Defendant's proffered reasons for its action weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence. *See Sarullo v. United States Postal Service*, 352 F.3d 789, 800 (3d Cir. 2003). Construing the evidence in the light most favorable to Plaintiff, he has not provided evidence from which a fact finder could either disbelieve Defendant's articulated reasons, or believe that a discriminatory reason was more likely than not the

8

cause of the employment actions. Therefore, the Court will grant Defendant's Motion for Summary Judgment and will deny Plaintiff's Motion for Summary Judgment on the Title VII race discrimination claim.

**Labor Management Relations Act ("LMRA").** It appears from paragraphs two through five of the Amended Complaint (D.I. 16) that Plaintiff asserts claims against the Defendant for breach of duties under the CBA pursuant to LMRA, 29 U.S.C. § 185. Section 301 of the LMRA provides that "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). It has been interpreted as "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). Therefore, when a state claim alleges a violation of a labor contract, the claim is preempted by § 301 and must be resolved by reference to federal law. *Id.* at 210. In addition, § 301 preemption extends beyond suits alleging contract violations to suits alleging liability in tort, and claims alleging state statutory violations if, in adjudicating those claims, the court would have to rely on federal law. *Id.* at 211; *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 368 (1990) ("State law is thus 'pre-empted' by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements.").

9

Paragraphs two through five of the Amended Complaint allege that Plaintiff was deprived of Delaware statutory rights under 19 Del. C. §§ 801 and 802[5] and his rights under the CBA. These claims are preempted by § 301. Because Plaintiff's state law claims are preempted by § 301, the claims are subject to a six-month limitation period. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 154, 169 (1983); *Hughes v. ABB, Inc.*, 131 F. App'x 379 (3d Cir. 2005). The six-month statute of limitations begins to run at the conclusion of the grievance procedures mandated by the collective bargaining agreement. *See Myers v. AK Steel Corp.*, 156 F. App'x 528, 530 (3d Cir. 2005). The arbitrator issued his decision on August 31, 2009, yet Plaintiff did not file the instant case until September 13, 2010, some six months after expiration of the limitation period. Therefore, paragraphs two through five are time-barred.

**42 U.S.C. § 1983 and § 1985**. The Amended Complaint references, in passing, 42 U.S.C. § 1983 and 1985. When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). There is no evidence of record that Defendant is a state actor or that it acted under color of state law. Nor has Plaintiff presented any evidence that the Defendant violated his constitutional rights to due process and equal protection.

---

[5] The claims under 19 Del. C. § 801 and § 802 pertain to a public authority's assertion of control over privately owned mass transportation systems. *See* 19 Del. C. § 802. It describes a public authority as "the State, any political subdivision thereof, or any board, commission, public agency or instrumentality thereof, which operates or takes over the operation of any mass transportation system." 19 Del. C. § 801(a). The evidence of record does not demonstrate that Defendant is a public entity or that it operates, or has taken over, any mass transportation system. The analysis in the text would apply to any other state law claim that could be asserted.

10

To prevail under 42 U.S.C. § 1985(3), plaintiff must prove: (1) a conspiracy on the part of Defendant; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *See Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006). The evidence of record does not support a finding of a conspiracy by Defendant, motivated by race or otherwise.

**18 U.S.C. § 1341 and § 1346.** These two sections are found in the federal criminal code. Neither § 1341 or § 1346 allow for a private cause of action. *See Tani v. FPL/NextEraEnergy*, 811 F. Supp. 2d 1004, 1020 (D. Del. 2011) ("18 U.S.C. § . . . 1341 . . . do[es] not provide for a private cause of action"); *Gaind v. Pierot*, 2006 WL 846268, at *4-5 (S.D.N.Y. Mar. 31, 2006) (noting that 18 U.S.C. § 1346 does not have private right of action), *aff'd*, 282 F. App'x 946 (2d Cir. 2008).

### III. Conclusion

Based upon the evidence of record, no reasonable jury could find for Plaintiff on any of his claims. Therefore, for the above reasons, the Court will grant Defendant's Motion for Summary Judgment and will deny Plaintiff's Motion for Summary Judgment.

An appropriate order will issue.